IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
7:17-CR-00025-H-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | MOTION TO DISMISS |
| v. | ) | INDICTMENT ON DUE |
| | ) | PROCESS GROUNDS |
| TAMER AHMED QAID SAID RABEH | ) | |

NOW COMES the Defendant, Tamer Ahmed Qaid Said Rabeh, (hereinafter referred to as "Mr. Rabeh"), by and through undersigned counsel, Nardine Mary Guirguis, hereby respectfully moves this Honorable Court to issue an order dismissing Mr. Rabeh's charges based on violations of his constitutional Due Process rights.

## BACKGROUND

1. On January 31, 2017, Mr. Rabeh was arrested on allegations of possessing a stolen firearm. Mr. Rabeh was then transported to the local Sheriff's Office and interrogated. An Arabic interpreter was not present during this interview. Thus, the officers conducted this interview in the English language only. Mr. Rabeh and the defense were not provided this evidence until late in the case.

2. Additionally, on March 7, 2017, another interrogation took place on Mr. Rabeh, this time with Immigration and Customs Enforcement Agents. During this interrogation, an Arabic interpreter was used telephonically to communicate with Mr. Rabeh. Again, the defense was not provided this information until substantially late in the case.

1

3. Thereafter, on March 22, 2017, Mr. Rabeh was charged in a one-count Indictment which charges him with an alleged violation of Title 18, United States Code, §922(g)(5)(A), illegal and unlawful alien in possession of a firearm.

4. The Government provided Mr. Rabeh's initial defense counsel with a copy of the discovery material on April 21, 2017. However, this initial discovery did not include any video or audio recorded interviews of Mr. Rabeh by the agents, as the same material was subsequently passed on to undersigned counsel.

5. Thus, on July 18, 2017, undersigned counsel entered a Notice of Appearance, and filed for a Request of Discovery on that same day. The original discovery file was provided by the Government to undersigned counsel on July 19, 2017. Accordingly, this discovery file lacked the necessary evidence of the video and audio recorded interviews of Mr. Rabeh.

6. After rigorous review of the only discovery provided, Mr. Rabeh and the defense filed for a Motion to Suppress the evidence against him on November 17, 2017.

7. On November 21, 2017, more than four days after the filing of the Motion to Suppress, the Government made a late disclosure to Mr. Rabeh and undersigned counsel. This late disclosure included the video and audio recorded interviews, as well as additional reports and several photographs from the case agents dating back to March 2017.

8. Thereafter, on December 1, 2017, the Government filed its Response in Opposition to the Motion to Suppress, which is solely based on the egregiously late disclosed evidence that Mr. Rabeh and the defense had lacked for the extensive investigatory period.

## LAW AND ARGUMENT

Dismissing the indictment is necessary to cure the irreparable prejudice caused by the Government's egregious *Brady* violation and to sanction the Government for such misconduct. The Constitutional baseline for the Government's duty to provide information to the defense is established in *Brady v. Maryland*, 373 U.S. 83 (1963). The United States Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates Due Process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *I.d.* at 87., Further, *Brady* strictly requires the Government to disclose exculpatory materials so as "to allow the defense to use the favorable material effectively in the preparation and presentation of it case." *United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970), *cert. denied*, 429 U.S. 924 (1976).

Second, courts may dismiss indictments "when the prosecution's actions rise, as they did here, to the level of flagrant prosecutorial misconduct" or under their supervisory powers to cure substantial prejudice. *United States v. Chapman*, 524 F.3d 1073, 1087-88 (9th Cir. 2008). Although this case is not binding upon this Honorable Court, it is nevertheless instructive as to when dismissal is appropriate in light of prosecutorial misconduct, including a *Brady* violation. Accordingly, "a district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. *Id.* at 1084.

The Government's egregious delay and utter failure to promptly disclose audio and video tapes of Mr. Rabeh's interrogation, along with reports of investigation by the law enforcement agents, and several photographs amounts to a violation of Mr. Rabeh's constitutional Due Process rights. While it is nonessential for this Honorable Court to determine whether bad faith was involved, it is the defense's contention that the government, via the law enforcement agents, intentionally and tactfully withheld the above-mentioned evidence considering their personal involvements in the videotaped interrogations and the taking of the photographs. Moreover, they provided government counsel with evidence and withheld these crucial exculpatory pieces of evidence. The juxtaposition of both recorded interrogations further verifies a flagrant violation of Mr. Rabeh's Miranda rights, given that it all of a sudden was warranted to provide an interpreter in the second interrogation but not provide an interpreter in the first interrogation. This blatant violation of Mr. Rabeh's Constitutional rights was hidden from the defense given that, although the defense did receive discovery, the government failed to provide these crucial pieces of discovery until after the defense filed its' Motion to Suppress, which was also after government counsel indicated that the defense received all discovery. Furthermore, the government's agents in this case are too experienced for it to be neglect or ignorance.

   A. THE GOVERNMENT'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE AMOUNTS TO AN EGREGIOUS *BRADY* VIOLATION

It is well-established in the seminal case, *Brady v. Maryland*, the prosecution must disclose material exculpatory evidence. This disclosure must occur whether the defendant

makes a specific request, a general request, or none at all. *United States v. Bagley*, 473 U.S 667, 682. It is also clear that a defendant's failure to request favorable evidence does not leave the government free of all obligation. *United States v. Agurs,* 427 U.S. 97, 110 (1976). Indeed, the United States Supreme Court has distinctively held:

> "The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation, (whether, that is, a failure to disclose is in good faith or bad faith) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."

*Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *See also West Virginia v. Youngblood*, 547 U.S. 867, 870 (2006) (*Brady* suppression occurs when the government does not turn over even evidence that is known only to police investigators and not to the prosecutor); *See also I.d.* at 871 (Further, if the police know about exculpatory information, it is considered to be within the possession of the prosecution and must be disclosed, even if the police never told the prosecutor about the evidence).

There are three elements to a *Brady* violation based on prosecutorial misconduct: "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and the evidence was material." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A violation occurs whenever the prosecution suppresses "evidence favorable to an accused…irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87.

5
Case 7:17-cr-00025-H   Document 50   Filed 02/09/18   Page 5 of 13

"Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S., at 682, 685. Further, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *I.d.* Thus, there must be a showing that the "favorable evidence could reasonably be taken to put the whole case in such different light as to undermine confidence in the verdict. *Kyles*, 514 U.S. at 435.

Here, the government's egregious delay in providing *Brady* material amounts to a violation against *Brady,* as well as Mr. Rabeh's constitutional Due Process rights. First, the evidence in question was substantially favorable to the defense due to its high exculpatory nature. The crux of the issue remains as to whether Mr. Rabeh was sufficiently provided his constitutional rights during his interrogations, and whether Mr. Rabeh could, at the minimalistic level, sufficiently comprehend the English language. The evidence the Government failed to promptly disclose would have substantiated the defense's contention that the officers did not afford Mr. Rabeh his basic constitutional rights, nor did Mr. Rabeh understand sufficiently to provide a valid waiver of those rights. Specifically, the fact that the officers did not provide Mr. Rabeh an Arabic interpreter during the January 31, 2017 interrogation is favorable because it further evidences the officers did not take the necessary steps to ensure Mr. Rabeh's constitutional rights were not infringed upon. Additionally, the fact that an Arabic interpreter was used during the subsequent March 7,

2017 interrogation further proves the inconsistencies with the Government's theory that "there was no indication to the officers that Mr. Rabeh could not understand English."

Second, the evidence was clearly suppressed by the Government in this case. This late disclosure of evidence contained hours of video, audio and photographs which had been in the law enforcement's possession, *ergo* the government's possession, since the time of Mr. Rabeh's indictment back in March of 2017. Yet, this exculpatory evidence was not provided initially to Mr. Rabeh's first defense counsel in April of 2017. Nor was the evidence provided to undersigned counsel thereafter on July 19, 2017. Furthermore, pursuant to *Kyles,* the Government had an affirmative duty to learn of any favorable evidence known to other people and agencies acting on the government's behalf on the case, including the police. Accordingly, the Government had approximately nine months to inquire and promptly disclose the evidence to Mr. Rabeh and the defense. Yet, somehow after Mr. Rabeh filed the Motion to Suppress the evidence provided at that time, the Government then decides to provide the additional discovery. This is highly unprofessional and amounts to prosecutorial misconduct, to which this Honorable Court should not allow.

Last, the materiality element can be met when taken as a whole, the favorable evidence would sufficiently cast a different shade of light on the case which could and, with reasonable probability would, undermine the confidence in the potential verdict. As previously mentioned, *supra*, this favorable evidence could bolster the defense's strong position that the Government cannot meet their high burden of proving a valid waiver of Mr. Rabeh's *Miranda* warnings. Additionally, this evidence can and would be used to show the several inconsistencies in the Government's rebuttal argument and case in chief. Thus,

when taken as a whole, this favorable evidence could impute reasonable doubt in this Honorable Court, or in any reasonable juror, such so that it could altercate any decision to be possibly made in the case. Therefore, based on the aforementioned reasons above, the Government's egregious failure to promptly disclose the favorable and exculpatory evidence amounts to an unconstitutional *Brady* violation.

B. DISMISSAL IS WARRANTED

I. DISMISSAL IS NECESSARY TO SANCTION THE GOVERNMENT AND THE OFFICERS AND TO SUFFICIENTLY REMEDY THE BRADY VIOLATION

While the general standard remedy for a *Brady* violation is a new trial, or a continuance, this Honorable Court should not follow the general rule. In so asking, the Defense acknowledges dismissal is a substantial remedy, to be exercised with great caution. However, Federal Rules of Criminal Procedure 16 (d)(2)(D) does authorize this Honorable Court to grant such a dismissal given the circumstances. The Rule provides that "if a party fails to comply with this rule [Rule 16, Discovery and Inspection], the Court may…(D) enter any other order that is just under the circumstances. F.R.C.P 16 (d)(2)(D).

Other courts have explicitly recognized that dismissal of charges with prejudice may be an appropriate remedy for a discovery violation. *See, e.g: United States v. Miranda*, 526 F.2d 1319, 1325 n.4 (2nd Cir. 1975) (sanctions which may be imposed against the government for failure to disclose material available to the defense include the exclusion or suppression of other evidence concerning the subject matter of the undisclosed material…or dismissal of the indictment…) (citations omitted); *United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010) (…dismissal with prejudice may be an

appropriate remedy for a *Brady* or *Giglio* violation using a court's supervisory powers…)(citations omitted); *United States v. Chapman*, 524 F.3d 1073, 1087-88 (9th Cir. 2008) (*Brady* violations are like other constitutional violations and dismissal is appropriate when the prosecutions actions rise to a level of flagrant prosecutorial misconduct).

Thus, while accidental or negligent conduct is insufficient to support a finding of flagrant misbehavior, the defense need not show that the government acted intentionally or maliciously. *I.d.* at 1085. Dismissal is warranted if the court concludes the government acted in "reckless disregard for [its] constitutional obligations. *I.d; See also Gov't of the Virgin Islands v. Fahie,* 419 F.3d 249, 253-55 (3rd Cir. 2005) (reckless disregard for a defendant's constitutional rights constitutes willful misconduct). Accordingly, district courts may dismiss an indictment under their supervisory powers for "violations of recognized rights" and to "deter illegal conduct." *I.d.*

Despite the obviously exculpatory nature of the recorded interrogations of Mr. Rabeh, the Government did not disclose the evidence until after Mr. Rabeh submitted a Motion to Suppress, that is, nine months after the evidence was continuously in the officer's possession and readily available to the Government. Thereafter, knowing that Mr. Rabeh and undersigned counsel did not have access or even awareness that the exculpatory evidence existed, the Government then provides the additional discovery after a crucial point in the case has passed. Furthermore, the Government then deliberately, consciously, and quite conveniently to them, submitted a rebuttal to the Motion to Suppress using only the evidence that was undisclosed to Mr. Rabeh and undersigned counsel. In essence, the Government audaciously is attempting to capitalize on the known *Brady* violation they

9

themselves created. This they cannot do. In doing so, it would completely and utterly undermine Mr. Rabeh's basic constitutional right to a fair trial. This is exactly the type of misconduct as described in *Fahie*. The explicit Governmental misconduct here shows there is a reckless disregard for Mr. Rabeh's constitutional rights, and therefore amounts to willful, unethical, and illegal misconduct sufficient to permit a dismissal.

II. DISMISSAL IS NECESSARY TO PREVENT FUTURE PROSECUTORIAL MISCONDUCT

Simply allowing a new trial, or a continuance, as a *Brady* sanction does not present a potent deterrent to prosecutors and the agents acting on their behalf. Thus, in order to encourage compliance with *Brady* disclosure requirements and promote efficient use of time and resources in the criminal justice system, courts must do more than grant new trials and continuances to address *Brady* misconduct. Other district courts have considered the sanction of dismissal as necessary to adequately deter future misconduct by the government and officers alike. *See, e.g., United States v. Diabate*, 90 F.Supp.2d 140 (D. Mass. 2000). In *Diabate*, the court granted a dismissal when the government disclosed important documents not in discovery the day before trial. *I.d.* The *Diabate* court found that "the government has not satisfied the violations of the rules constituted harmless errors" and determined that dismissal was necessary to ensure the defendant received a fair trial and to deter "a historic pattern of misconduct." *I.d.* at 144-145. The court went on to state "moreover, in the past, sanctions short of dismissal have not sufficed to deliver the message to the government, [and its agents], and cause it to prevent misconduct concerning discovery from recurring." *I.d.* at 144.

Thus, absent any serious sanctions, such as a dismissal that is warranted here, there are no ramifications in place to properly deter and prevent the exact misconduct that has occurred in this case. Prosecutors, and the officers of the law, swore to protect the people, serve the people, and uphold the law. Thus, they are all held to a higher standard of practice, one that should not be ignored for the possibility of a better or quicker conviction. At its very core, the baseline standard set out in *Brady* and its progeny cannot be forgotten nor lessened. Yet, by ordering any sanction short of a dismissal, *Brady* is but an eloquent word that is haphazardly tossed around to the point of semantic satiation, that is, it loses its meaning to the listeners, who then perceive it as repeated meaningless sounds. Therefore, to preserve the constitutional protections *Brady* and its progeny afford, substantial sanctions such as a dismissal are necessary to deter future misconduct and weakening its concept.

## CONCLUSION

Ultimately, the Government cannot get a "mulligan" in this case. That is because the Government has so completely misapprehended its professional and constitutional obligations that the case cannot be saved. This could have easily been avoided if the Government, and its agents, had played fairly and within the bounds of zealous professional advocacy, or at the very minimum, acknowledged the harm to Mr. Rabeh's constitutional rights of Due Process. However, the Government willingly abandoned the traditional notion of fairness that it should be required to maintain. Thus, in doing so, the Government has caused irreparable prejudice to Mr. Rabeh, such so that a dismissal is warranted in this case.

Wherefore, for these reasons and any other reasons considered meritorious by this Honorable Court, Mr. Rabeh respectfully requests that this Motion be granted and the indictment against Mr. Rabeh be dismissed.

Respectfully submitted this 9th day of February 2018.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>CJA Panel Attorney
>434 Fayetteville St. Suite 2140
>Raleigh, North Carolina 27601
>Telephone: (919) 832-0500
>Nardine@guirguislaw.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States by electronic transmission as indicated below:

>Sebastian Kielmanovich
>Assistant United States Attorney
>310 New Bern Ave., Suite 800
>Raleigh, North Carolina 27601-1461
>Sebastian.Kielmanovich@usdoj.gov

This 9th day of February 2018.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>CJA Panel Attorney
>434 Fayetteville St. Suite 2140
>Raleigh, North Carolina 27601
>Telephone: (919) 832-0500
>Nardine@guirguislaw.com